UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KENNETH KOBS,

     Plaintiff,

   v.           Case No. 19-CV-571

ANDREW M. SAUL,
Commissioner of the Social Security Administration,

     Defendant.

## DECISION AND ORDER

**1. Introduction**

  Plaintiff Kenneth Kobs alleges he has been disabled since January 15, 2010. (Tr. 14.) He seeks a period of disability and disability insurance benefits and supplemental security income. After his application was denied initially (Tr. 70-87) and upon reconsideration (Tr. 90-121), a hearing was held before an administrative law judge (ALJ) on November 16, 2017 (Tr. 36-67). On April 11, 2018, the ALJ issued a written decision concluding that Kobs was not disabled. (Tr. 14-28.) After the Appeals Council denied Kobs's request for review on February 21, 2019 (Tr. 1-4), he filed this action. All parties

have consented to the full jurisdiction of a magistrate judge (ECF Nos. 16, 19) and this matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Kobs "has not engaged in substantial gainful activity since January 15, 2010, the alleged onset date[.]" (Tr. 16.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Kobs has the following severe impairments: "cardiomyopathy, fibromyalgia, degenerative disc disease, diabetes, and a mood disorder." (Tr. 17.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-

month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Kobs "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 17.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Kobs has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to occasional stooping, crouching, kneeling, crawling and climbing of ramps and stairs; he cannot climb ladders, ropes or scaffolds; he must avoid exposure to heights, hazards and moving machinery; and he is limited to unskilled work and to jobs having only occasional decision making and changes in work setting.

(Tr. 20.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work.

20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. Kobs's past relevant work was as a lumber/parts sorter. (Tr. 26.) The ALJ concluded that Kobs "is capable of performing past relevant work as a lumber sorter. This work does not require the performance of work-related activities precluded by [his] residual functional capacity[.]" (Tr. 26.)

Even though the ALJ found Kobs was not disabled at step four, he made alternate findings and continued to step five. (Tr. 27.) The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that "[i]n the alternative, considering [Kobs's] age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that [Kobs] also can perform." (Tr. 27.) In reaching that conclusion, the ALJ relied on testimony from a vocational expert (VE), who testified that a hypothetical individual of Kobs's RFC, age, education, and work experience could perform the requirements of small parts assembler, mail clerk, and food preparer. (*Id.*) After finding Kobs could perform work in the national economy, the ALJ concluded that he was not disabled. (Tr. 28.)

**3. Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder*, 529 F.3d at 413).

**4. Analysis**

Kobs argues that the ALJ erred (1) in his assessment of the opinion evidence; (2) by relying on the VE's testimony; and (3) in formulating the RFC. (ECF No. 18 at 12-35.)

### 4.1. Opinion Evidence—State Agency Psychologist Dr. Therese Harris and Consultative Examiner Sandra King

Kobs argues that the ALJ erred by giving "more weight" to the opinion of State agency psychological consultant Therese Harris, Ph.D. than to consultative psychological

examiner Dr. Sandra King. (ECF No. 18 at 12-14.) She also argues that the ALJ did not build an accurate and logical bridge between Dr. King's opinion and the RFC determination. (*Id.* at 14-20.)

### 4.1.1. Weighing the Opinions

The ALJ gave "great weight" to state agency psychological consultant Dr. Harris's opinion and "significant weight" to Dr. King's opinion. (Tr. 25.) The ALJ found that "Dr. Harris's opinions are consistent with the overall evidence," (*id.*), and "Dr. King's opinions appropriately balance [Kobs's] subjective reports with objective evidence," (Tr. 26). Therefore, the ALJ stated that "the opinions of Drs. Harris and King are reflected in the residual functional capacity herein." (*Id.*) Kobs argues the ALJ erred by giving "more weight" to the opinions of Dr. Harris. (ECF No. 18 at 13.)

Kobs does not explain the basis for his conclusion that "great weight" means more weight than "significant weight." Although the ALJ used different words to describe how much weight he was giving the two opinions, it is not clear that he intended to give either opinion more weight than the other. As Kobs admits, the ALJ's decision "places both Dr. Harris and Dr. King on equal footing," (ECF No. 18 at 14).

Accordingly, the court finds no err with the weight the ALJ gave to these opinions.

### 4.1.2. RFC Determination

Dr. King opined that Kobs "may have difficulties remembering and carrying out instructions" and "is expected to have moderate to severe difficulties withstanding

6
Case 1:19-cv-00571-WED   Filed 07/30/20   Page 6 of 20   Document 26

routine work stress and adapting to change." (Tr. 903.) The RFC limits Kobs to "unskilled work and to jobs having only occasional decision making and changes in work setting." (Tr. 20.) Kobs argues that even though the ALJ gave "significant weight" to Dr. King's opinions, the RFC and the hypothetical question posed to the VE fail to fully address Dr. King's findings. (ECF No. 18 at 14-20.) He argues that Dr. King did not limit Kobs to unskilled work, the ALJ did not address Kobs's issue with remembering and carrying out instructions, and the RFC limitation of "occasional decision making and changes in work setting" does not correspond to Dr. King's assessment of "moderate to severe difficulties withstanding routine work stress and adapting to change." (*Id.* at 15-17.)

In response, the Commissioner argues that, "despite giving significant and great weight to Drs. King and Harris's opinions, respectively, the ALJ was not required to adopt all limitations in those opinions verbatim." (ECF No. 24 at 4.) The Commissioner also argues that the RFC assessment does account for specific limitations found by Drs. King and Harris and that Kobs never argues what additional restrictions the ALJ should have added to the RFC determination. (*Id.* at 4-5.)

"The ALJ must base his RFC determination on the entire record and 'is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians.'" *Corder v. Berryhill*, No. 17-C-0779, 2018 WL 3150234, at *18 (E.D. Wis. June 27, 2018) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)). Although Kobs argues that the ALJ did not address his memory issues, the

ALJ stated that "any mild to moderate memory issues, like those demonstrated at the consultative examination, are accommodated by the residual functional capacity herein, which restricts [Kobs] to unskilled work." (Tr. 18-19.) The regulations define "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). Accordingly, the court agrees with the ALJ that, even though Dr. King never gave a restriction to unskilled work, Kobs's memory issues identified by Dr. King were adequately addressed in the RFC.

Even though Kobs argues that a limitation to "occasional" decision making and changes in work setting does not address a "moderate to severe" limitation in his ability to withstand work stress and adapt to change, he never explains how the RFC could be corrected to address it. The ALJ stated:

> [Kobs] has reported that he has difficulty handling changes in routine, and the consultative psychological examiner noted that he may have difficulty withstanding work stress. However, he engages in activities requiring some capacity in this domain, such as caring for his grandchildren and grocery shopping. Further, the record reflects that, even when experiencing symptoms of his impairments, [Kobs] interacts appropriately with treating and examining providers, and demonstrates adequate judgment and insight. In sum, while [Kobs] has some limitation in this domain, the evidence of record does not support a finding that is more than moderate.

(Tr. 19 (internal citations omitted).) Despite Kobs's contention that the ALJ "fail[ed] to articulate how he determined that the evidence in the record supported that conclusion," (ECF No. 18 at 17), the court finds that the ALJ provided good reasons supported by

8
Case 1:19-cv-00571-WED   Filed 07/30/20   Page 8 of 20   Document 26

substantial evidence for his findings. He cited to Dr. King's finding on exam and also provided other evidence supporting a moderate limitation.

Accordingly, the court finds that the RFC determination and hypothetical questions accounted for Dr. King's findings.

### 4.2. VE Testimony

Kobs argues that it was improper for the ALJ to rely on the VE's testimony in order to satisfy the Commissioner's burden at step five. (ECF No. 18 at 21-26.) He argues that, "[g]iven the method used by the vocational expert to arrive at the jobs-estimate and relevant caselaw, the vocational testimony is not based upon substantial numbers." (*Id.* at 21.) Kobs never states, and the VE never explained, what this method was. Kobs compares the jobs found by the VE to O*Net listings and argues:

> DOT [Dictionary of Occupational Titles] # 706.684-022 cross-walks to SOC [Standard Occupational Classification] 51-9199. There were 256,050 jobs in that category with 1590 different DOT codes falling under that SOC code. The vocational expert testified that there were 200,000 small parts assemblers, leaving 56,050 jobs for the other 1589 DOT codes. DOT # 209.687-026 cross-walks to SOC 43-9051. There were 85,800 jobs in that category with 14 different DOT codes falling under that SOC code. The vocational expert testified that there were 100,000 mail clerks, a number which exceeds all of the jobs in that category. DOT # 316.684-014 cross-walks to SOC # 35-2021. There were 832,690 jobs in that category with 13 different DOT codes falling under that SOC code. The vocational expert testified that there were 800,000 food preparers, leaving 32,690 jobs for the other 12 DOT codes.

(*Id.* at 21-22 (footnote omitted) (internal citations omitted).)[1] Because Kobs was unrepresented at the hearing, he argues that the ALJ should have asked the VE to lay a foundation for the job numbers by asking about the methods used to reach those numbers and the reliability of the methods used. (*Id.* at 23-24.) Accordingly, Kobs argues that the ALJ's decision is not supported by substantial evidence. (*Id.* at 24-25.)

In response the Commissioner argues that the ALJ's conclusion that Kobs was not disabled did not rely on the VE's testimony that Kobs could perform other jobs because the VE found at step four that Kobs could perform his past relevant work. (ECF No. 24 at 11.) And Kobs never objected to the VE's step four finding, so the Commissioner argues he forfeited this argument. (*Id.*) Nevertheless, the Commissioner argues that the ALJ's alternate finding at step five was supported by substantial evidence because the VE stated his testimony was based on information found in the DOT and his extensive experience working in job placement and counseling for disabled and non-disabled clients. (*Id.* at 12.)

The VE testified that Kobs would be able to perform his past work as a sorter. (Tr. 60.) That conclusion meant that Kobs is not disabled. Although the ALJ could have stopped there, he proceeded to ask the VE if there were any other jobs that the

---

[1] Kobs explains that "[t]he O*Net uses a 'cross-walk' method where job statistics are organized into Selective Occupational Categories or SOC codes. The method lists various DOT codes under SOC codes. You determined [sic] the SOC code by determining which SOC code contains the various DOT codes." (ECF No. 18 at 21 n.3.)

hypothetical person of Kobs's age, education, work experience and RFC could perform. (*Id.*) The VE identified three jobs, stating:

> [T]he first job would be small parts assembly, with a representative DOT of 706.684-022, which is a light, unskilled job, SVP of two. And that job numbers approximately 200,000 in the national economy.
>
> The second job, Your Honor, would be mail clerk. DOT 209.687-026. Also light, unskilled, SVP of two. Approximately 100,000.
>
> And a third job would be food preparation, like a deli clerk or a sandwich maker. A representative DOT on that, Your Honor, would be 316.684-014. Again, a light duty job, SVP of two. Approximately 800,000 in the national economy.

(Tr. 60-61.)

The number of jobs available is relevant because an individual is only classified as disabled if he is unable to perform "work which exists in the national economy," defined as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. §§ 404.1566(b), 416.966(b). "As few as 174 jobs has been held to be significant, and it appears to be well-established that 1,000 jobs is a significant number." *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (internal citation omitted).

At the end of the VE's testimony, the following exchange occurred:

> Q [ALJ] And is your testimony here today consistent with the Dictionary of Occupational Titles?
>
> A [VE] Yes. The only caveat is the breaks and absences. Those are not addressed in the DOT, and I'm relying on my experience to address those issues.

(Tr. 62.) An ALJ has an "affirmative duty" to ask this question. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006). Pursuant to SSR 00-4p:

> When a VE or VS [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, at *4.

Ordinarily, a plaintiff forfeits any objection to a vocational expert's testimony if he does not raise it at the hearing. *Brown v. Colvin*, 845 F.3d 247, 250, 254 (7th Cir. 2016) (finding plaintiff forfeited several claims regarding the VE's testimony by not objecting during the hearing); *Liskowitz*, 559 F.3d at 744 (finding plaintiff forfeited argument that the VE should not have relied on Occupational Employment Quarterly because it is published by a private company); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) (finding plaintiff forfeited a challenge to the VE's testimony despite the fact there was no evidence in the record of how the VE arrived at his conclusion).

"[I]f the basis of the VE's testimony is questioned at the hearing, 'then the ALJ should make an inquiry … to find out whether the purported expert's conclusions are reliable[.]'" *Overman v. Astrue*, 546 F.3d 456, 465 (7th Cir. 2008) (quoting *Donahue v.*

*Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)). The claimant need not make a "formal objection," but instead must just "cross-examine the expert and elicit statements that call into question the reliability of his conclusions." *Courtney v. Berryhill*, 385 F. Supp. 3d 761, 763-64 (W.D. Wis. 2018) (citing *Overman*, 546 F.3d at 464-65). But, if the VE's foundation or reasoning is not called into question, "an ALJ is entitled to accept the vocational expert's conclusion.…" *Donahue*, 279 F.3d at 446. *See Chavez v. Berryhill*, 895 F.3d 962, 970 (7th Cir. 2018) ("Before accepting a VE's job-number estimate, the ALJ, when confronted by a claimant's challenge, must require the VE to offer a reasoned and principled explanation.").

The question presented here, however, is how this standard is impacted by an unrepresented claimant who likely did not know that he should, or even could, question the VE about the reliability of his methods. ALJs must develop the record, and this requirement is heightened for unrepresented claimants. *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997) (citing *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991)). "However, how much evidence to gather is typically left to the reasoned judgment of the Commissioner, and a significant omission is usually required before the court will find that the Commissioner failed to assist a *pro se* claimant in developing the record fully and fairly." *Davis v. Commissioner of Social Security*, No. 1:15-cv-01121-JEH, 2016 WL 2885866, at *6 (C.D. Ill. May 17, 2016) (citing *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994)).

13

Case 1:19-cv-00571-WED   Filed 07/30/20   Page 13 of 20   Document 26

In *Davis v. Commissioner of Social Security*, the court found that the ALJ had not obtained a valid waiver of counsel, so it was the Commissioner's burden to establish that the ALJ adequately developed the record. *Davis*, 2016 WL 2885866, at *7-8. The court found several ways in which the ALJ did not do so, including by not questioning the VE about the reliability of his testimony. *Id.* at *8. The court held that "the ALJ had an *obligation* to further question the VE about reliability of his testimony in order for the ALJ to satisfy his burden to adequately develop the record." *Id.* (emphasis in original). The court held that "such an obligation arose regardless of the fact that Davis did not question the basis of the VE's testimony at the hearing." *Id. See also Wiszowaty v. Astrue*, 861 F. Supp. 2d 924, 948 (N.D. Ind. 2012) ("Although it is not so obvious that the three jobs would have a GED Reasoning Development Level of 2 that an ALJ would immediately recognize the conflict, given Mr. Wiszowaty's unrepresented status, the ALJ should have inquired further into the requirements of the positions given the limitation to one- to two-step tasks.").

Even in situations in which the claimant was unrepresented at the hearing, "[w]hen a claimant raises an SSR 00-4p argument after the close of an evidentiary hearing, he must prove that the conflicts between the VE's testimony and the DOT were so apparent that the ALJ should have recognized them without assistance." *Glover v. Berryhill*, No. 16 C 5607, 2017 WL 2506411, at *8 (N.D. Ill. June 9, 2017) (citing *Overman*, 546 F.3d at 463).

Here, there is no issue as to the adequacy of Kobs's waiver of his right to counsel, nor is there an apparent conflict in the VE's testimony. Therefore, the ALJ was not required to question the reliability of the VE's methods. Although Kobs provides evidence of the "cross-walk" method and the numbers of jobs under certain SOC codes, he never establishes that the VE was required to use this method. Clearly some degree of research was needed in order to argue that the job numbers provided by the VE were inaccurate, so it is unlikely that the ALJ "should have recognized [the conflicts] without assistance." Kobs also never argues that the VE's testimony was conclusory. Accordingly, the court cannot say that the ALJ's failure to ask the VE about the reliability of his methods was a "significant omission" warranting remand or that the ALJ's decision was not supported by substantial evidence. *See Chavez*, 895 F.3d at 970 ("With this opinion [the Court of Appeals for the Seventh Circuit] intend[s] no new obligations.").

The court also agrees with the Commissioner that any potential error in the job numbers at step five was harmless because the VE testified that Kobs could perform his past relevant work, and the decision was not based on the additional jobs identified by the VE. *See Courtney*, 385 F. Supp. 3d at 763 ("When the decision relies on job estimates, it is based on substantial evidence only if those job estimates are the product of a reliable method.") (citing *Chavez*, 895 F.3d at 968). And Kobs does not contest that he can perform his past relevant work. Accordingly, the ALJ's failure to question the VE regarding the reliability of his methods is not grounds for remand.

Kobs requests that, if this matter is remanded, the court order a new vocational assessment. (ECF No. 18 at 26.) However, given the ALJ's step four finding, the court does not find such an assessment to be necessary.

**4.3. Reliance on the State Agency Medical Consultants' Opinions**

Kobs argues that the ALJ erred in formulating the RFC by relying on outdated opinions of the state agency medical consultants. (ECF No. 18 at 27-35.) Pat Chan, M.D., and Mina Khorshidi, M.D., gave opinions in March and August 2015, respectively. (Tr. 76, 100.) Dr. Chan opined that Kobs's RFC should be reduced to light work and that he would need to avoid any exposure to heights, hazards, or magnetic fields. (Tr. 75-76.) At the reconsideration level Dr. Khorshidi opined that there was no change in the RFC from the initial level. (Tr. 100.)

Kobs argues that after these opinions were rendered his erythema worsened and he had issues with his implantable cardioverter defibrillator (ICD). (ECF No. 18 at 28.) In addition, an MRI[2] was completed in February 2016 that showed further cervical problems. (*Id.*) He says that "[b]oth findings undermined the state agency physicians' findings, and merited an evaluation by a medical expert." (*Id.*) He contends that the ALJ "played doctor" by interpreting the findings and deciding that they did not affect the earlier opinions of the state agency physicians. (*Id.* at 29-30.) Kobs seeks remand "for an

---

[2] The Commissioner notes that this was actually a CT scan rather than MRI. (ECF No. 24 at 17 n.3; *see* Tr. 1120.)

evaluation of [his] heart condition and the implant to determine if the listing is met or equaled given the additional medical evidence, and, if not, then what impact this may have on the occupational base." (*Id.* at 32.) And with regard to the MRI findings Kobs argues that "the matter must be remanded to determine the impact of this worsening condition on the residual functional capacity." (*Id.* at 34.)

In response the Commissioner argues that Kobs did not establish that any evidence generated after the state agency consultants' opinions was likely to have changed their opinions. (ECF No. 24 at 13.) As a result, the ALJ did not err by relying on them. (*Id.*) At the time they rendered their opinions, the Commissioner argues that they knew about his cardiomyopathy, defibrillator placement, and an activation of the defibrillator but still opined that he was capable of light work. (*Id.* at 15.) The Commissioner cites to medical evidence showing that Kobs is now on an antiarrhythmia drug and his most recent ICD report in July 2017 showed normal cardiac function. (*Id.* at 14.) The Commissioner makes similar arguments regarding his cervical symptoms, citing to evidence that there was improvement in his muscle function and cervical range of motion and that his pain was managed. (*Id.* at 15.) Accordingly, contrary to Kobs's argument, the Commissioner argues that "the records post-dating Drs. Chan and Khorshidi's opinions demonstrate improved functioning," so they likely would not have changed their opinions. (*Id.* at 14.) While acknowledging that in some cases an ALJ should

obtain an updated medical expert opinion, the Commissioner argues that it is also appropriate at times for the ALJ to analyze the records instead. (*Id.* at 16-17.)

"ALJs may not rely on outdated opinions of agency consultants 'if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.'" *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)). And the Seventh Circuit has agreed with the argument that if evidence "change[s] the picture so much," then "the ALJ err[s] by continuing to rely on an outdated assessment.…" *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016).

The ALJ gave "great weight" to the opinions of the state agency medical consultants, explaining:

> Drs. Chan and Khorshidi opined that [Kobs] retained the capacity for work at a light exertional level, but must avoid all exposure to hazards. The opinions of Drs. Chan and Khorshidi are consistent with the overall evidence of record and appropriately balance [Kobs's] history of cardiomyopathy, musculoskeletal pain, and diabetes, with objective evidence as to improvement with treatment; clinical findings of intact gait, strength, and range of motion; and daily activities, which have included going on walks, caring for a child, preparing meals, and tending to light household chores. Accordingly, the opinions of Drs. Chan and Khorshidi are reflected in the residual functional capacity finding herein.

(Tr. 25 (internal citations omitted).) The ALJ also addressed the trajectory of Kobs's cardiac condition:

> [Kobs's] cardiac condition was discovered after he experienced syncope in June 2014. An echocardiogram at that time showed severe reduction in left ventricular systolic function with ejection fraction of 30 to 35 percent. An

> August 2014 cardiac stress test showed an ejection fraction of 23 percent; however, [Kobs] was able to complete the test with appropriate blood pressure and heart rate, and no ischemic changes. With medical management of cardiomyopathy, [Kobs] had normal left ventricular systolic function by December 2015, with only trace mitral and tricuspid regurgitation. The record reflects that [Kobs] experienced an episode of near syncope and "repeated firing" of his ICD in May 2016. However, cardiac workup did not reveal any significant findings and [Kobs] was started on antiarrhythmic drug therapy (sotalol). As of [Kobs's] last ICD report in July 2017, his cardiac function was normal.

(Tr. 22.) And regarding Kobs's musculoskeletal pain the ALJ explained:

> [Kobs] also reported improvement in musculoskeletal pain with each course of physical therapy. While he has also reported that Oxycodone improves his pain, he indicated in May 2016 that he prefers to use marijuana for pain relief. His treating provider noted that his chronic pain was "managed" at that time. While subsequent treatment notes document intermittent exacerbations in back pain, these improved with treatment. For example, in October 2017, [Kobs] sought emergency treatment for an onset of low back pain after trying to fix his garage. Although [Kobs] had decreased range of lumbar motion due to pain, he had normal strength and sensation, and negative straight leg raise. November 2017 treatment notes indicate that [Kobs] denied back pain and neck pain. He had normal musculoskeletal range of motion, including his neck; as well as full (5/5) strength.

(Tr. 23 (internal citations omitted).)

The court finds that the ALJ gave good reasons supported by substantial evidence for giving "great weight" to the opinions of Drs. Chan and Khorshidi. The ALJ addressed how Kobs's impairments had progressed since their opinions were rendered but still found their opinions to be representative of his abilities. Even though the ALJ did not mention the CT scan from February 2016, "an ALJ need not mention every piece of evidence, so long he builds a logical bridge from the evidence to his conclusion." *Denton*

*v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008). The court does not find the opinions to be so outdated that the testimony of a new medical expert is needed, especially as Kobs showed continued improvement in the time following their opinions. Accordingly, the ALJ did not err by giving great weight to the opinions of Drs. Chan and Khorshidi.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 30th day of July, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge